McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  jim.wagoner@mccormickbarstow.com
Lejf E. Knutson, #234203
  lejf.knutson@mccormickbarstow.com
Graham Van Leuven, #295599
  graham.vanleuven@mccormickbarstow.com
7647 North Fresno Street
Fresno, California 93720
Telephone:     (559) 433-1300
Facsimile:     (559) 433-2300

Attorneys for Plaintiff AIG Property Casualty
Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AIG PROPERTY CASUALTY COMPANY, | Case No. 2:15-cv-04842-BRO-RAO |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| WILLIAM H. COSBY and JANICE DICKINSON, | **28 U.S.C. 2201** |
| Defendants. | |

## **COMPLAINT FOR DECLARATORY RELIEF**

1.      AIG Property brings this action for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Rules 8 and 57 of the Federal Rules of Civil Procedure. AIG Property seeks a judicial determination of the respective rights of the parties under the three insurance policies issued to William H. Cosby, Jr. ("Cosby") for claims of Defamation/Defamation Per Se, False Light, and Intentional Infliction of Emotional Distress arising out of statements Cosby or his alleged representatives allegedly made regarding Janice Dickinson ("Dickinson").

## **THE PARTIES**

2.      Plaintiff AIG Property is a corporation incorporated in the State of

1    Pennsylvania with its principal place of business in New York, New York.

2       3.      Cosby is, and at all times herein mentioned was, an individual who is a

3    citizen and resident of the State of Massachusetts.

4       4.      Upon information and belief, Janice Dickinson ("Dickinson") is, and at all

5    times herein mentioned was, a citizen and resident of the State of California domiciled

6    in the County of Los Angeles.

7                          **JURISDICTION AND VENUE**

8       5.      The United States District Court for the Central District of California has

9    original jurisdiction over this case under 28 U.S.C. § 1332 because the amount in

10   controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and this

11   matter involves citizens of different states.

12      6.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part

13   of the events giving rise to this action occurred in this judicial district consisting of the

14   filing and present maintenance of an action by Defendant Dickinson against Defendant

15   Cosby for which Defendant Cosby seeks coverage under policies of insurance issued by

16   Plaintiff.

17      7.      Venue is also proper under 28 U.S.C. §1391(b)(3) as the defendants are

18   subject to the Court's personal jurisdiction with respect to this action since each

19   defendant is already a party to another lawsuit pending in California, and as Dickinson

20   is a resident domiciled in this judicial district.

21      8.      This Court is authorized to grant declaratory judgment under the

22   Declaratory Judgment Act, 28 U.S.C. § 2201, pursuant to Rule 57 of the Federal Rules

23   of Civil Procedure.

24                           **FACTUAL ALLEGATIONS**

25                             **The Insurance Policies**

26      9.      AIG Property issued homeowners policy no. PCG 0006004261 with

27   effective dates of January 1, 2014 to January 1, 2015 and January 1, 2015 to January 1,

28   2016, written on  form no. PCHO (09/06) as modified by various endorsements

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

2

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

(hereinafter "Massachusetts Policy"). The Massachusetts policy contains a liability policy limit of $1,000,000. The named insureds are William H. Cosby and Camille Cosby.  A true and correct certified copy of the Massachusetts Policy for policy period January 1, 2014 to January 1, 2015, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "A". A true and correct certified copy of the Massachusetts Policy for policy period January 1, 2015 to January 1, 2016, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "B".

10.    The Massachusetts Policy provides under the Insuring Agreement for "PART III – LIABILITY" that "[w]e will pay damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies."  The Massachusetts Policy further provides that "[w]e will pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage…."

11.    The term "insured person" is defined by the Massachusetts Policy as:

      a.    You or a family member;

      b.    An Additional Insured named in the policy;

      c.    Any person given permission by you or a family member to use a vehicle or watercraft covered under this policy with respect to their legal responsibility arising out of its use; or

      d.    A spouse. A spouse is a marriage partner. The term spouse also includes an individual registered under state law as a domestic partner of the insured person shown on the Declarations Page.

12.    The term "occurrence" is defined by the Massachusetts Policy as:

      a.    A loss or an accident, to which this insurance applies,

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damage; or

b.   An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.

13.   The term "personal injury" is defined by the Massachusetts Policy as:

a.   Bodily Injury

…

c.   Shock, emotional distress, mental injury;

d.   Invasion of privacy;

e.   Defamation, libel or slander;

…

14.   The Massachusetts Policy contains exclusions for "Sexual Molestation or Corporal Punishment", "Business Pursuits", "Intentional Acts", and "Controlled Substances" which state:

E.   Exclusions

This policy does not provide coverage for liability, defense costs or any other cost or expense for:

...

9.   Sexual Molestation or Corporal Punishment

Personal injury arising out of any actual, alleged or threatened by any person:

a.   Sexual molestation, misconduct or harassment;

b.   Corporal punishment; or

c.   Sexual, physical or mental abuse.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

4

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

…

11.   Business Pursuits

Personal injury or property damage arising out of an insured person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others. However, this exclusion does not apply to:

a.   Volunteer work for an organized charitable, religious or community group;

b.   Incidental business activity; or

c.   Limited Residence Premises Business Liability Coverage.

...

17.   Intentional Acts

Personal injury or property damage resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

…

19.   Controlled Substance(s)

Personal injury or property damage arising out of the use,

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

5

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

sale, manufacture, delivery or transfer or possession of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. This exclusion does not apply to the legitimate use of prescription drugs of a person following the orders of a licensed physician.

...

15.   The Massachusetts Policy defines "Business" as "a part-time or full-time trade, occupation or profession, including farming or ranching, other than incidental business."

16.   The Massachusetts Policy defines "Incidental Business" as "a business activity that does not produce gross revenues in excess of $10,000 in any year, has no employees subject to workers' compensation or other similar disability laws, and conforms to federal, state and local laws.  Incidental business includes the business of farming provided that it does not involve employment of others for more than 1,250 hours of farm work during the Policy period, and does not produce more than $25,000 in gross annual revenues from the raising or care of animals or agriculture.  Incidental business includes residences listed on the Declarations Page that you own and rent to others."

17.   Additionally, AIG Property issued homeowners policy no. PCG 0006004359 with effective dates of January 1, 2014 to January 1, 2015 and January 1, 2015 to January 1, 2016, written on form no. PCHO-CA (09/06), as modified by various endorsements (hereinafter "California Policy"). The California Policy contains a liability policy limit of $1,000,000. The only named insured identified is 1500 ******** LLC. A true and correct certified copy of the California Policy for policy period January 1, 2014 to January 1, 2015, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "C". A true and correct certified copy of the California

Policy for policy period January 1, 2015 to January 1, 2016, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "D".

      18.    The California Policy provides under the Insuring Agreement for "PART III – LIABILITY" that "[w]e will pay damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies." The California Policy further provides that "[w]e will pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage…."

      19.    The term "insured person" is defined by the California Policy as:

          a.    You or a family member;

          b.    An Additional Insured named in the policy;

          c.    Any person given permission by you or a family member to use a vehicle or watercraft covered under this policy with respect to their legal responsibility arising out of its use; or

          d.    A spouse. A spouse is a marriage partner. The term spouse also includes an individual registered under state law as a domestic partner of the insured person shown on the Declarations Page.

      20.    The term "family member" is defined by the California Policy to mean "a person related to you by blood, marriage or adoption that lives in your household including a ward or foster child."

      21.    The term "occurrence" is defined by the California Policy as:

          a.    A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

7

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

damage; or

    b.    An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.

22.    The term "personal injury" is defined by the California Policy as:

    a.    Bodily Injury

    …

    c.    Shock, emotional distress, mental injury;

    d.    Invasion of privacy;

    e.    Defamation, libel or slander;

    …

23.    The California Policy contains exclusions for "Sexual Molestation or Corporal Punishment", "Business Pursuits", "Intentional Acts", and "Controlled Substances" which state:

    E.    Exclusions

    This policy does not provide coverage for liability, defense costs or any other cost or expense for:

    ...

    9.    Sexual Molestation or Corporal Punishment

    Personal injury arising out of any actual, alleged or threatened by any person:

        a.    Sexual molestation, misconduct or harassment;

        b.    Corporal punishment; or

        c.    Sexual, physical or mental abuse.

    …

    11.    Business Pursuits

    Personal injury or property damage arising out of an insured

person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others. However, this exclusion does not apply to:

a.      Volunteer work for an organized charitable, religious or community group;

b.      Incidental business activity; or

c.      Limited Residence Premises Business Liability Coverage.

...

17.   Intentional Acts

Personal injury or property damage resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

…

19.   Controlled Substance(s)

Personal injury or property damage arising out of the use, sale, manufacture, delivery or transfer or possession of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. This

> exclusion does not apply to the legitimate use of prescription drugs of a person following the orders of a licensed physician.

> …

24.     The California Policy defines "Business" as "a part-time or full-time trade, occupation or profession, including farming or ranching, other than incidental business."

25.     The California Policy defines "Incidental Business" as "a business activity that does not produce gross revenues in excess of $10,000 in any year, has no employees subject to workers' compensation or other similar disability laws, and conforms to federal, state and local laws.  Incidental business includes the business of farming provided that it does not involve employment of others for more than 1,250 hours of farm work during the Policy period, and does not produce more than $25,000 in gross annual revenues from the raising or care of animals or agriculture.  Incidental business includes residences listed on the Declarations Page that you own and rent to others."

26.     AIG Property also issued personal excess liability policy no. PCG 0006235889 with effective dates January 1, 2014 to January 1, 2015 and January 1, 2015 to January 1, 2016, written on form no. PEL-MA (03/06) as modified by various endorsements (hereinafter "PEL policy") . The named insureds are "William H. Cosby" and "Camille Cosby." The PEL Policy contains a liability policy limit of $35,000,000. A true and correct certified copy of the PEL Policy for policy period January 1, 2014 to January 1, 2015, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "E". A true and correct certified copy of the PEL Policy for policy period January 1, 2015 to January 1, 2016, as redacted to remove private information immaterial to the issues of this case regarding the insured locations and premiums paid, is attached hereto as Exhibit "F".

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

10
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

27.     The PEL Policy provides under the Insuring Agreement for "PART II – WHAT IS COVERED" that "[w]e will pay damages an insured  person is legally obligated to pay because of personal injury or property damage caused by an occurrence covered by this policy anywhere in the world:

a.     In excess of damages covered by the required underlying insurance or the Minimum Required Underlying Limit, whichever is greater; or

b.     From the first dollar of damages where required underlying insurance either:

1)     Exists but, coverage does not apply for a particular occurrence; or

2)     Is not required under this policy and no underlying insurance exists.

28.     The PEL Policy further provides under the Insuring Agreement for "PART IV DEFENSE COVERAGE AND CLAIM EXPENSE" that "[w]e will defend an insured person against any suit seeking damages covered by Excess Liability, Limited Employment Practices Liability, or Limited Charitable Board Directors and Trustees Liability under this policy and where:

1.     The underlying insurance has been exhausted by payment of claims;

2.     No underlying insurance applies; or

3.     With respect to Limited Charitable Board Directors and Trustee Liability, any applicable Deductible has been exhausted."

29.     The term "insured person" is defined by the PEL Policy as:

a.     You or a family member;

b.     An Additional Insured named in the policy;

c.     Any person given permission by you or a family member to use a vehicle or watercraft covered under this policy with

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

respect to their legal responsibility arising out of its use.

30.   The term "occurrence" is defined by the PEL Policy as:

    a.   An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which first results during the Policy Period in bodily injury or property damage; or

    b.   An offense, including a series of related offenses, committed during the Policy Period that results in personal injury.

31.   The term "personal injury" is defined by the PEL Policy as:

    a.   Bodily Injury

    …

    c.   Shock, emotional distress, mental injury;

    d.   Invasion of privacy;

    e.   Defamation, libel or slander;

    …

32.   The PEL Policy contains exclusions for "Business Pursuits", "Intentional Acts", and "Controlled Substances" which state:

    A.   As respects Excess Liability, Limited Employment Practices Liability and Limited Charitable Board Directors and Trustees Liability:

    This insurance does not provide coverage for liability, defense costs or any other cost or expense:

    …

    6.   Business Pursuits

    Arising out of an insured person's business

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others.

However, this exclusion does not apply to:

a.      Volunteer work for an organized charitable, religious or community group;

b.      Incidental business activity;

c.      Limited Residence Premises Business Liability coverage; or

d.      Residences held for rentals which are listed on the Declarations Page.

8.      Intentional Acts

Arising out of any criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person, or the gaining of any profit or advantage to which an insured person is not entitled. We will not cover any amount for which the insured person is not financially liable or which are without legal recourse to the insured person; We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

…

9.   Controlled Substance(s)

Arising out of the use, sale, manufacture, delivery or transfer or possession of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C. Sections 811 and 812. However, this exclusion does not apply to the legitimate use of prescription drugs of a person following the orders of a licensed physician.

33.   The PEL Policy contains an Exclusion for "Sexual Misconduct" that states:

B.   As respects Excess Liability, the following also applies:

This insurance does not provide coverage for liability, defense costs or any other cost or expense:

…

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

14
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

3.     Sexual Misconduct

Arising out of any actual, alleged or threatened:

a.     Sexual misconduct, molestation or harassment;

b.     Corporal punishment; or

c.     Sexual, physical or mental abuse.

…

### The *Dickinson* Lawsuit

34.     On May 20, 2015, Dickinson filed a civil complaint against Cosby and certain unnamed "Doe" defendants in Los Angeles Superior Court, case no. BC580909, entitled *Janice Dickinson vs. William H. Cosby Jr.* (hereinafter "*Dickinson v. Cosby*"). On November 16, 2015, Dickinson filed a first amended complaint (hereinafter the "*Dickinson* Complaint") against Cosby and Martin Singer ("Singer") and certain unnamed "Doe" defendants.

35.     In the *Dickinson* Complaint, Dickinson alleges that she is an "internationally known fashion model, photographer and author" and that Cosby is "an internationally known comedian, actor and author." She further alleges that Singer has represented Cosby as his "actual and/or apparent agent, authorized representative, press agent, lawyer, servant and/or employee" and that at all relevant times mentioned," Cosby and Singer were "the agent, partner, or employee of" each other and, that "in doing the acts alleged" in the *Dickinson* Complaint, they were "acting within the course, scope and authority of that agency, partnership, or employment, and with the knowledge and consent of" each other. The *Dickinson* Complaint further alleges that Cosby and Singer caused and are responsible for the "below-described unlawful conduct or acted jointly with others who did so, authorized, acquiesced in or set in

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

15

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

1  motion actions that led to the unlawful conduct; failed to take action to prevent the

2  unlawful conduct; failed to prevent further harm to [Dickinson]; and/or ratified the

3  unlawful conduct and actions by employees, subordinates, and agents under [Cosby's

4  and Singer's] direction and control, including failure to take remedial action."

5      36.    Dickinson further alleges that in or about 1982: (1) Dickinson "received a

6  phone call" from Cosby asking her "to fly to Lake Tahoe, Nevada to meet him"; (2)

7  "Cosby offered to pay for [Dickinson's] flight from Bali to Lake Tahoe to discuss

8  [Dickinson's] future show business and singing career"; (3) "Dickinson agreed"

9  "excited at the possibility of expanding her career to television and music"; (4) "[a]fter

10  arriving in Lake Tahoe, [Dickinson] had dinner with [Cosby]"; (5) "Dickinson was

11  suffering from menstrual pain;" (6) "Cosby offered her a glass of wine and a pill which

12  [Cosby] represented would help [Dickinson] with cramps;" (7) "Dickinson consumed

13  the pill believing it to be what [Cosby] had represented it to be;" (8) "Cosby deceived

14  [Dickinson] into consuming a narcotic that heavily sedated [Dickinson];" (9) "Cosby

15  intentionally drugged [Dickinson];" and (10) "later that night [Cosby] sexually

16  assaulted [Dickinson], penetrating [Dickinson] vaginally and anally, without her

17  consent, and leaving semen on her body."

18      37.    Dickinson alleges that "[o]ver the years [Cosby has] expressed a lurid and

19  obsessive fascination with drugging women in order to have sex with them," including

20  references to "Spanish Fly" in Cosby's 1969 comedy album "It's True! It's True!", in

21  Cosby's 1991 book *Childhood*, and during a 1991 interview with Larry King on CNN.

22  In addition it is alleged that "[o]n a 1990 episode of his television program *The Cosby*

23  *Show*, [Cosby], in the role of Dr. Cliff Huxtable, administered his 'special barbecue

24  sauce' which made female family members stop fighting and become amorous toward

25  their husbands." Dickinson continues to allege that Cosby "was not merely an actor on

26  the show" and that he "had frequent, continuous and regular input into and oversight of

27  the production, conceptualization and writing of *The Cosby Show*." Dickinson also

28  alleges that "[i]n reality, [Cosby's] seemingly facetious public statements and

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

16

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

performances about Spanish Fly, barbecue sauce, and the like revealed his penchant for an preoccupation with drugging women and then having sex with them while they were rendered unconscious and unable to consent." Dickinson further alleges that Cosby's "references to using substances to drug women into sexual submission were direct admissions of his own callous and predatory behavior."

38.     In addition, Dickinson alleges that "[e]ven after dozens of women came forward to disclose that they had been drugged and raped by [Cosby], he has continued to brazenly joke about [Cosby's] criminal activity in at least one public forum."  The Complaint specifically alleges that during a January 8, 2015 stand up performance in Ontario, Canada, Cosby, after asking a female audience member where she was going and after being told she was going to get a drink, Cosby reportedly replied "[y]ou have to be careful about drinking around me."  Dickinson further alleges that "[t]his comment was intended by [Cosby] to mock, insult, demean and humiliate [Dickinson] and [Cosby's] other accusers."

39.     Dickinson alleges that in 2005 and 2006, Cosby "testified under oath in an action for sexual assault and related claims brought by Andrea Constand" and that in that testimony "Cosby admitted to fraudulently obtaining and illegally distributing sedatives for the purpose of sex with multiple women, including women who had not come forward in that action." Dickinson also alleges that "[i]n addition, at that deposition, [Cosby] failed and refused to deny at least one incident of sexual activity with a woman who was incapacitated due to a drug he had administered to her, *i.e.*, rape." Dickinson alleges that Singer "was present at that deposition and/or reviewed the transcript of the deposition thereafter and/or was made aware of [Cosby's] admissions therein prior to the issuance of The Defamatory Press Statements described below."

40.     Dickinson further alleges that on or about November 18, 2014, "Dickinson disclosed in a television interview that [Cosby] had drugged and raped her."

41.     Dickinson also alleges that on or about November 18, 2014, Cosby through Singer "issued a press statement to members of the news media" ("The

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

17

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

November 18 Press Statement") in which Cosby and Singer "made the following purported statements of fact regarding [Dickinson][]:

    a.   *We are writing regarding your planned story regarding Janice Dickinson's new false and outlandish claims about Mr. Cosby in her recent Entertainment Tonight interview, asserting that he raped her in 1982 (the "Story").*

    b.   *That Story is fabricated and is an outrageous defamatory lie....*

    c.   *Her new Story claiming that she had been sexually assaulted is a defamatory fabrication...*

    d.   *That never happened, just like the alleged rape never happened.*

    e.   *Ms. Dickinson completely fabricated the Story of alleged rape.*"

42.   In addition, Dickinson alleges that on or about November 19, 2014, Cosby through Singer, "published a second statement to the press about [Dickinson]" ("The November 19 Press Statement") in which Cosby and Singer "made the following purported statements of fact regarding [Dickinson][]:

    a.   '*Janice Dickinson's story accusing Bill Cosby of rape is a lie.*'

    b.   '*Documentary proof and Ms. Dickinson's own words show that her new story about something she now claims happened back in 1982 is a fabricated lie*'"

43.   Further, Dickinson alleges that on or about November 20, 2014, Cosby through Singer "published another statement to the press about Dickinson" in which Cosby and Singer "made the following purported statements of fact regarding [Dickinson][]:

    a.   '*Ms. Traitz [another woman accusing Defendant Cosby of sexual assault] is the latest example of people coming out of the woodwork with unsubstantiated or fabricated stories about my client [Defendant Cosby].*'

    b.   '*People coming out of nowhere with this sort of inane yarn is what*

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

*happens in a media-driven feeding frenzy.'*

    c.    '*We've reached the point of absurdity. The stories are getting more ridiculous…'*"

44.    Dickinson additionally alleges that on or about November 21, 2014, Cosby through Singer "published another statement to the press about Dickinson" ("The November 21 Press Statement"). On information and belief, Dickinson alleges that Cosby made the following purported statements of fact regarding Dickinson in The November 21 Press Statement:

    "a.    '*The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.'*

    b.    '*These brand new claims about alleged decades-old events are becoming increasingly ridiculous…'* "

45.    Dickinson further alleges that The November 18 Press Statement, The November 19 Press Statement, The November 20 Press Statement, and The November 21 Press Statement (collectively "The Defamatory Press Statements"): (1) were "republished by thousands of media entities worldwide"; (2) were "unprivileged as no litigation had been filed, threatened or contemplated by or between Ms. Dickinson and Defendant Cosby at that time" and  Cosby "knew that any actions based on [Cosby's] drugging and sexual assault of Ms. Dickinson were time barred such that Ms. Dickinson could not bring an action in 2014 for Defendant Cosby's actions in drugging and raping her in 1982"; (3) "had a natural tendency to injure Ms. Dickinson's reputation in the entertainment industry in which she works, and with the public worldwide"; and (4) "were published by [Cosby] knowing that they were false".

46.    Dickinson further alleges that Cosby is a "sophisticated professional[] with decades of media experience" and sent "The Defamatory Press Statements not primarily to attorneys for media outlets, but to producers and reporters." In this regard,

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

19
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

Dickinson alleges that as Cosby "foresaw and intended, those producers and reporters did not consider The Defamatory Press Statements to be privileged or confidential, and instead they immediately published them on air and in print."

47.    Dickinson also alleges that "Cosby knows [or should have known] that he drugged and raped Ms. Dickinson" and that Cosby "knew [or should have known] that the statements about [Dickinson] set forth above in The Defamatory Press Statements were false."

48.    Dickinson alleges additionally that "[i]n or about July 2015, another attorney and/or spokesperson for [Cosby], Monique Pressley, acting at the direction of [Cosby] and within the course and scope of her agency, stated that The Defamatory Press Statements were [Cosby's], in that [Cosby] '[was] relying on able counsel to speak for him' in response to allegations of sexual assault; that 'when [Cosby's] attorneys speak, we're speaking for him'; and that The Defamatory Press Statements are 'the statement[s] of Bill Cosby."

49.    Dickinson further alleges that after The Defamatory Press Statements were released, she, "through counsel, demanded a public retraction from [Cosby] in order to avoid the necessity of [the underlying] litigation" but that "[n]evertheless, [Cosby] failed and refused to retract [his] Defamatory Press Statements, or any portion thereof." Dickinson alleges that "[t]he failure and refusal of [Cosby] to retract The Defamatory Press Statements" "constitutes actual malice and/or reckless disregard for the truth or falsity of The Defamatory Press Statements" and also "constitutes acceptance, endorsement and ratification of The Defamatory Press Statements."

50.    Cosby tendered his defense in the *Dickinson v. Cosby* action to AIG Property under the Massachusetts, California and PEL Policies.  Although the claims against Cosby are barred by exclusions in the Massachusetts, California and PEL Policies and the California Policy does not provide liability coverage to Cosby as an "insured person," AIG Property accepted the tender and is defending Cosby in *Dickinson v. Cosby* under the Massachusetts Policy under a reservation of rights.  AIG

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

20
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

1   Property has also advised Cosby that he does not qualify as an "insured person" under
2   the California Policy.

3          51.    By letter dated June 25, 2015, AIG Property accepted the tender of defense
4   on behalf of Cosby under the Massachusetts Policy for the policy period of January 1,
5   2014 to January 1, 2015 pursuant to a reservation of rights. By letter dated August 19,
6   2015, AIG Property amended and superseded the June 25, 2015 reservation of rights by
7   accepting, under reservation of rights, the tender of defense on behalf of Cosby under
8   the Massachusetts Policy for the policy periods of January 1, 2014 to January 1, 2015
9   and January 1, 2015 to January 1, 2016. By letter dated December 14, 2015, AIG
10  Property amended and superseded the August 19, 2015 reservation of rights by
11  accepting, under reservation of rights, the tender of defense to Dickinson's First
12  Amended Complaint on behalf of Cosby under the Massachusetts Policy for the policy
13  periods of January 1, 2014 to January 1, 2015 and January 1, 2015 to January 1, 2016.
14  In all three letters, AIG Property reserved the right, *inter alia,* to seek recovery from
15  Cosby of all fees and costs incurred in the defense of the *Dickinson v. Cosby* action.

16                          **FIRST CAUSE OF ACTION**

17    (Declaratory Relief Against All Defendants As To Non-Coverage For Denials Of
18          Allegations Of Sexual Molestation, Misconduct And Abuse)

19    (Dismissed By Court Order On November 13, 2015; Included Herein Solely For
20                Purposes Of Preservation Of Issues On Appeal)

21         52.    AIG Property incorporates by reference all of the allegations of paragraphs
22  1 through 51 as though fully set forth herein.

23         53.    AIG Property alleges that the  Massachusetts and California Policies do
24  not provide coverage for the claims asserted in *Dickinson v. Cosby*. The Massachusetts
25  and California Policies each contain exclusions for  "sexual molestation or corporal
26  punishment" which exclude "coverage for liability, defense costs or any other cost or
27  expense" for: "personal injury," defined to include "defamation, libel or slander,"
28  arising out of any … alleged … :" "a. [s]exual molestation, misconduct, or harassment;

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

21

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

1      … or c. [s]exual physical or mental abuse."

2          54.    AIG Property further alleges the PEL Policy contains an exclusion for

3    "sexual misconduct" which excludes "coverage for liability, defense costs or any other

4    cost or expense:" "[a]rising out of any … alleged …" "a. [s]exual misconduct,

5    molestation or harassment;… or c. [s]exual, physical or mental abuse."

6          55.    The complaint in *Dickinson v. Cosby* alleges that: (1) Cosby "sexually

7    assaulted [Dickinson], penetrating her vaginally and anally, without her consent"; (2)

8    "[o]n or about November 18, 2014", Dickinson "disclosed in a television interview that

9    [] Cosby had drugged and raped her"; (3) Cosby or his agents later published

10   statements denying this "alleged" sexual assault; (4) on January 8, 2015, at a stand up

11   performance in Ontario Canada, Cosby made a comment intended by him to "mock,

12   insult, demean and humiliate" Dickinson and Cosby's "other accusers"; and (5) these

13   statements expressly and/or impliedly denying the "alleged" sexual assault caused

14   injury to Ms. Dickinson for which she seeks compensation in the *Dickinson v. Cosby*

15   action. As such, the "alleged" injury-causing statements "alleged" in the *Dickinson v.*

16   *Cosby* action purportedly made by or on behalf of Cosby, arose out of the "alleged"

17   sexual molestation of Ms. Dickinson, regardless of whether the "alleged" sexual

18   molestation, misconduct and/or abuse actually occurred.  Accordingly, the above

19   quoted exclusions in paragraphs 53-54 apply to preclude coverage for the claims

20   asserted in *Dickinson v. Cosby*.  AIG Property therefore has no obligation to defend or

21   indemnify Cosby under the Massachusetts, California or  PEL Policies for the claims

22   asserted and damages alleged in *Dickinson v. Cosby*.

23         56.    An actual controversy has arisen and now exists between AIG Property, on

24   the one hand, and Cosby and Dickinson, on the other hand, with regard to the duties

25   and obligations owed by AIG Property to Cosby on the basis of these exclusions. AIG

26   Property contends that it has no duty to defend or indemnify Cosby based on the

27   exclusions for allegations of "sexual molestation or corporal punishment" and "sexual

28   misconduct" which Cosby has denied, which denials give rise to the "alleged" claims

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

22

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

and damages asserted in *Dickinson v. Cosby*. AIG Property is informed and believes, and on such information and belief alleges, that Cosby and Dickinson dispute AIG Property's contentions and assert that these exclusions do not apply to preclude coverage.

57.     Due to the actual and present controversy described above, AIG Property requests a judicial declaration of the rights, duties and obligations in regards to the "sexual molestation or corporal punishment" and "sexual misconduct" exclusions with respect to Cosby and Dickinson pursuant to 28 U.S.C. § 2201.

## SECOND CAUSE OF ACTION

### (Declaratory Relief As to The California Policy Against All Defendants)

58.     AIG Property incorporates by reference all of the allegations of paragraphs 1 through 57 as though fully set forth herein.

59.     AIG Property alleges that Cosby does not qualify as an "insured person" under the California Policy because the policy is issued to 1500 ******** LLC and does not afford coverage to any individual. As the allegations in *Dickinson v. Cosby* are only against Cosby, the California Policy does not provide coverage.

60.     An actual controversy has arisen and now exists between AIG Property, on the one hand, and Cosby and Dickinson, on the other hand, with regard to the duties and obligations owed by AIG Property to Cosby under the California Policy.  AIG Property contends that it has no duty to defend or indemnify Cosby under the California Policy for the claims and damages alleged in *Dickinson v. Cosby* because Cosby does not qualify as an "insured person" under that policy. AIG Property is informed and believes, and on such information and belief alleges, that Cosby and Dickinson dispute AIG Property's contention and assert that the California Policy provides coverage for Cosby for the claims asserted and damages alleged in *Dickinson v. Cosby*.

61.     Due to the actual and present controversy described above, AIG Property requests a judicial declaration of the rights, duties and obligations under the California Policy with respect to Cosby and Dickinson pursuant to 28 U.S.C. § 2201.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

23

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

**THIRD CAUSE OF ACTION**

(Reimbursement/Unjust Enrichment/Restitution Re: Defense Fees And Costs Against Defendant Cosby)

(Dismissed By Court Order On November 13, 2015; Included Herein Solely For Purposes Of Preservation Of Issues On Appeal)

62.     AIG Property incorporates by reference all of the allegations of paragraphs 1 through 61 as though set forth fully herein.

63.     By letter dated June 25, 2015, AIG Property accepted the tender of defense on behalf of Cosby in the *Dickinson v. Cosby* action under the Massachusetts Policy for the policy periods of January 1, 2014 to January 1, 2015 pursuant to a reservation of rights.

64.     By letter dated August 19, 2015, AIG Property accepted the tender of defense on behalf of Cosby in the *Dickinson v.* Cosby action under the Massachusetts Policy for the policy periods of January 1, 2014 to January 1, 2015 and January 1, 2015 to January 1, 2016 pursuant to a reservation of rights.

65.     AIG Property has no obligation to defend Cosby in the *Dickinson v. Cosby* action as the claims alleged in that action are not covered or are otherwise excluded under the terms of the Massachusetts Policy.

66.     AIG Property has acknowledged that it will pay, subject to a reservation of rights and also subject to the limitations of California Civil Code § 2860(c), defense fees and costs on behalf of Cosby in the *Dickinson v. Cosby* action which AIG Property alleges are not covered under the Massachusetts Policy. Cosby has been unjustly enriched by the amount of all defense fees and costs paid or to be paid by AIG Property to defend claims against Cosby in the *Dickinson v. Cosby* action that are not covered and are excluded under the terms of the Massachusetts Policy.

67.     Cosby has obtained or will obtain a direct unjust enrichment without any adequate legal basis, and should be required to return that enrichment through the doctrine of restitution. AIG Property therefore seeks reimbursement of all sums paid

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

24

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

according to proof to defend Cosby against all claims in the *Dickinson v. Cosby* action pursuant to *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th. 643, 657 - 660 (2005).

## FOURTH CAUSE OF ACTION

(Declaratory Relief Against All Defendants As To Non-Coverage Based Upon Intentional Act(s) Exclusions)

68.    AIG Property incorporates by reference all of the allegations of paragraphs 1 through 67 as though fully set forth herein.

69.    AIG Property alleges that the  Massachusetts and California Policies do not provide coverage for the claims asserted in *Dickinson v. Cosby*. The Massachusetts and California Policies each contain exclusions for  "intentional acts" which exclude "coverage for liability, defense costs or any other cost or expense" for: "personal injury," defined to include "defamation, libel or slander," "resulting from any criminal, willful, intentional or malicious act or omission by any person" or "for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury." These exclusions apply "even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended."

70.    AIG Property further alleges the PEL Policy contains an exclusion for "intentional acts" which excludes "coverage for liability, defense costs or any other cost or expense:" "[a]rising out of any criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person, or the gaining of any profit or advantage to which an insured person is not entitled" or for "claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury." "This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended."

71.    The complaint in *Dickinson v. Cosby* alleges that: (1) "Cosby offered to pay for [Dickinson's] flight from Bali to Lake Tahoe to discuss [Dickinson's] future

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

25

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

show business and singing career"; (2) "while in Lake Tahoe, "Cosby offered [Dickinson] a glass of wine and a pill which he represented would help [Dickinson's] cramps"; (2) "Dickinson consumed the pill believing it was what [Cosby] had represented it to be"; (3) "Cosby deceived [Dickinson] into consuming a narcotic that heavily sedated her"; (4) "Cosby intentionally drugged [Dickinson]; (5)"[a]fter [Cosby] intentionally drugged [Dickinson], later that night he sexually assaulted her"; (6) "[o]ver the years [Cosby] has expressed a lurid and obsessive fascination with drugging women in order to have sex with them" including in "his 1969 comedy album, 'It's True! It's True!'", "his 1991 book, *Childhood*", and "his 1991 interview with Larry King on CNN to promote his book"; (7) "[o]n or about November 18, 2014", Dickinson "disclosed in a television interview that [] Cosby had drugged and raped her"; (8) Cosby issued two press statements about Dickinson to the news media in which he made several "purported statements of fact regarding Ms. Dickinson" which "had a natural tendency to injure Ms. Dickinson's reputation"; (9) these statements "were published by [Cosby] knowing that they were false"; (10) "Cosby knows that he drugged and raped [Dickinson]. He knew that calling her rape disclosure a lie was a false statement"; (11) on January 8, 2015, at a stand up performance in Ontario Canada, Cosby made a comment intended by him to "mock, insult, demean and humiliate" Dickinson and Cosby's "other accusers"; and (12) these statements caused injury to Ms. Dickinson for which she seeks compensation in the *Dickinson v. Cosby* action.

72.    As such, the injury-causing statements alleged in the *Dickinson v. Cosby* action purportedly made by or on behalf of Cosby resulted from or arose out of "criminal, willful, intentional or malicious act[s] or omission[s]" or "acts or omissions of any person which [were] intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury." Accordingly, the above quoted exclusions in paragraphs 69-70, apply to preclude coverage for the claims asserted in *Dickinson v. Cosby*. AIG Property therefore has no obligation to defend or indemnify Cosby under the Massachusetts, California or PEL Policies for the claims asserted and

damages alleged in *Dickinson v. Cosby*.

73.    An actual controversy has arisen and now exists between AIG Property, on the one hand, and Cosby and Dickinson, on the other hand, with regard to the duties and obligations owed by AIG Property to Cosby on the basis of these exclusions. AIG Property contends that it has no duty to defend or indemnify Cosby based on the "intentional acts" exclusions. AIG Property is informed and believes, and on such information and belief alleges, that Cosby and Dickinson dispute AIG Property's contentions and assert that these exclusions do not apply to preclude coverage.

74.    Due to the actual and present controversy described above, AIG Property requests a judicial declaration of the rights, duties and obligations in regards to the "intentional acts"  exclusions with respect to Cosby and Dickinson pursuant to 28 U.S.C. § 2201.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants As To Non-Coverage Based Upon Business Pursuits Exclusions)

75.    AIG Property incorporates by reference all of the allegations of paragraphs 1 through 74 as though fully set forth herein.

76.    AIG Property alleges that the Massachusetts, California, and PEL Policies do not provide coverage for the claims asserted in *Dickinson v. Cosby*. The Massachusetts, California, and PEL Policies each contain exclusions for "Business Pursuits" which exclude "coverage for liability, defense costs or any other cost or expense" for: "personal injury," defined to include "defamation, libel or slander," arising out of "an insured's person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others."

77.    The complaint in *Dickinson v. Cosby* alleges that: (1) "Cosby is an internationally known comedian, actor and author"; (2) "Cosby offered to pay for [Dickinson's] flight from Bali to Lake Tahoe to discuss [Dickinson's] future show

1   business and singing career"; (3) Dickinson agreed because she was "[e]xcited at the
2   possibility of expanding her career to television and music"; (4) while in Lake Tahoe,
3   "[a]fter [Cosby] intentionally drugged [Dickinson], later that night he sexually
4   assaulted her"; (5) "Dickinson told some of her close friends about the incident, but did
5   not tell the police due to fear of retaliation against her and her family by [Cosby], who
6   was and is a wealthy and powerful celebrity"; (6) "[o]ver the years [Cosby] has
7   expressed a lurid and obsessive fascination with drugging women in order to have sex
8   with them" including in "his 1969 comedy album, 'It's True! It's True!'", "his 1991
9   book, *Childhood*", "his 1991 interview with Larry King on CNN to promote his book"
10  and "[o]n a 1990 episode of his television program *The Cosby Show*"; (7) "[o]n or
11  about November 18, 2014", Dickinson "disclosed in a television interview that []
12  Cosby had drugged and raped her"; (8) Cosby or his agents later published statements
13  denying this alleged sexual assault; (9) on January 8, 2015, at a stand up performance in
14  Ontario Canada, Cosby made a comment intended by him to "mock, insult, demean and
15  humiliate" Dickinson and Cosby's "other accusers"; and (10) these statements caused
16  injury to Ms. Dickinson for which she seeks compensation in the *Dickinson v. Cosby*
17  action.

18      78.    As such, the injury-causing statements alleged in the *Dickinson v. Cosby*
19  action purportedly made by or on behalf of Cosby, arose out of Cosby's "business
20  property or business pursuits, investment activity or any activity intended to realize a
21  profit for either an insured person or others." Accordingly, the above quoted exclusions
22  in paragraphs 76 (including the exclusion contained in the California policy to the
23  extent Cosby is found to be an "insured person"), apply to preclude coverage for the
24  claims asserted in *Dickinson v. Cosby*. AIG Property therefore has no obligation to
25  defend or indemnify Cosby under the Massachusetts, California or PEL Policies for the
26  claims asserted and damages alleged in *Dickinson v. Cosby*.

27      79.    An actual controversy has arisen and now exists between AIG Property, on
28  the one hand, and Cosby and Dickinson, on the other hand, with regard to the duties

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

28

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

and obligations owed by AIG Property to Cosby on the basis of these exclusions. AIG Property contends that it has no duty to defend or indemnify Cosby based on the "business pursuits" exclusions. AIG Property is informed and believes, and on such information and belief alleges, that Cosby and Dickinson dispute AIG Property's contentions and assert that these exclusions do not apply to preclude coverage.

80.    Due to the actual and present controversy described above, AIG Property requests a judicial declaration of the rights, duties and obligations in regards to the "business pursuits"  exclusions with respect to Cosby and Dickinson pursuant to 28 U.S.C. § 2201.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants As To Non-Coverage Based Upon Controlled Substances Exclusions)

81.    AIG Property incorporates by reference all of the allegations of paragraphs 1 through 80 as though fully set forth herein.

82.    AIG Property alleges that the  Massachusetts and California Policies do not provide coverage for the claims asserted in *Dickinson v. Cosby*. The Massachusetts and California Policies each contain exclusions for  "Controlled Substances" which exclude "coverage for liability, defense costs or any other cost or expense" for: "personal injury," defined to include "defamation, libel or slander," "arising out of the use, sale, manufacture, delivery or transfer or possession of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812."

83.    AIG Property further alleges the PEL Policy contains an exclusion for "Controlled Substances" which excludes "coverage for liability, defense costs or any other cost or expense:" "[a]rising out of the use, sale, manufacture, delivery or transfer or possession of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C. Sections 811 and 812."

84.    The complaint in *Dickinson v. Cosby* alleges that: (1) "while in Lake Tahoe, "Cosby offered [Dickinson] a glass of wine and a pill which he represented

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

29

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

would help [Dickinson's] cramps"; (2) "Dickinson consumed the pill believing it was what [Cosby] had represented it to be"; (3) "Cosby deceived [Dickinson] into consuming a narcotic that heavily sedated her"; (4) "Cosby intentionally drugged [Dickinson]; (5) "[o]ver the years [Cosby] has expressed a lurid and obsessive fascination with drugging women in order to have sex with them" including in "his 1969 comedy album, 'It's True! It's True!'", "his 1991 book, *Childhood*", and "his 1991 interview with Larry King on CNN to promote his book"" and "[o]n a 1990 episode of his television program *The Cosby Show*"; (6) "admitted to fraudulently obtaining and illegally distributing sedatives for the purpose of sex with multiple women"; (7) "[o]n or about November 18, 2014", Dickinson "disclosed in a television interview that [] Cosby had drugged and raped her"; (7) Cosby or his agents later published statements denying these allegations; (8) on January 8, 2015, at a stand up performance in Ontario Canada, Cosby made a comment intended by him to "mock, insult, demean and humiliate" Dickinson and Cosby's "other accusers"; and (9) these statements caused injury to Ms. Dickinson for which she seeks compensation in the *Dickinson v. Cosby* action.

85.    As such, on information and belief, the injuries alleged in the *Dickinson v. Cosby* action, arose out of the use, sale, manufacture, delivery or transfer or passion of a Controlled Substance(s) as defined by Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Accordingly, the above quoted exclusions in paragraphs 82-83 apply to preclude coverage for the claims asserted in *Dickinson v. Cosby*. AIG Property therefore has no obligation to defend or indemnify Cosby under the Massachusetts, California or  PEL Policies for the claims asserted and damages alleged in the *Dickinson v. Cosby* action.

86.    An actual controversy has arisen and now exists between AIG Property, on the one hand, and Cosby and Dickinson, on the other hand, with regard to the duties and obligations owed by AIG Property to Cosby on the basis of these exclusions. AIG Property contends that it has no duty to defend or indemnify Cosby based on the

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF**

exclusions for injuries arising out of the use, sale, manufacture, delivery or transfer or possession of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. AIG Property is informed and believes, and on such information and belief alleges, that Cosby and Dickinson dispute AIG Property's contentions and assert that these exclusions do not apply to preclude coverage.

87.    Due to the actual and present controversy described above, AIG Property requests a judicial declaration of the rights, duties and obligations in regards to the "Controlled Substances" exclusions with respect to Cosby and Dickinson pursuant to 28 U.S.C. § 2201.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AIG Property respectfully requests that this Court enter a judgment:

1.    Determining and declaring that:

a.    AIG Property has no duty to defend Cosby under homeowners policy no. PCG 0006004359 in connection with the pending action against Cosby in Los Angeles Superior Court, case no. BC580909, entitled *Janice Dickinson vs. William H. Cosby Jr.*

b.    AIG Property has no duty to indemnify Cosby under homeowners policy no. PCG 0006004359 in connection with the pending action against Cosby in Los Angeles Superior Court, case no. BC580909, entitled *Janice Dickinson vs. William H. Cosby Jr.*

c.    AIG Property has no duty to defend Cosby under homeowners policy no. PCG 0006004261 in connection with the pending action against Cosby in Los Angeles Superior Court, case no. BC580909, entitled *Janice Dickinson vs. William H. Cosby Jr.*

d.    AIG Property has no duty to defend or indemnify Cosby under homeowners policy no. PCG 0006004261 in connection with the pending action against Cosby in Los Angeles Superior Court,

1    case no. BC580909, entitled *Janice Dickinson vs. William H. Cosby*

2    *Jr.*

3    e.       AIG Property has no duty to defend Cosby under personal

4    excess liability policy no. PCG 0006235889 in connection with the

5    pending action against Cosby in Los Angeles Superior Court, case

6    no. BC580909, entitled *Janice Dickinson vs. William H. Cosby Jr.*

7    f.       AIG Property has no duty to indemnify Cosby under

8    personal excess liability policy no. PCG 0006235889 in connection

9    with the pending action against Cosby in Los Angeles Superior

10   Court, case no. BC580909, entitled *Janice Dickinson vs. William H.*

11   *Cosby Jr.*

12   2.       Awarding AIG Property its costs; and

13   3.       Granting such further relief as this Court deems just and proper.

14                    **DEMAND FOR JURY TRIAL**

15           Pursuant to Rule 38 of the Federal Rules of Civil Procedure, AIG Property

16   demands trial by jury in this action of all issues so triable.

17   Dated:  January 12, 2016              McCORMICK, BARSTOW, SHEPPARD,
                                              WAYTE & CARRUTH LLP
18

19

20                                        By:_____/s/ James P. Wagoner_____
21                                               James P. Wagoner
22                                               Lejf E. Knutson
                                                 Graham Van Leuven
23                                           Attorneys for AIG Property Casualty
                                                     Company
24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On January 12, 2016, I served true copies of the following document(s) described as **SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF** on the interested parties in this action as follows:

Kirk Pasich                                   Attorneys for Defendant,
Kim Umanoff                                WILLIAM H. COSBY
Liner LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518
kpasich@linerlaw.com
kumanoff@linerlaw.com
(310) 500 – 3500

Alan Goldstein                             Attorneys for Defendant,
Jivaka Candappa                          JANICE DICKINSON
The Bloom Firm
20700 Ventura Blvd., Suite 301
Woodland Hills, CA  91364
Avi@thebloomfirm.com
Jivaka@thebloomfirm.com
(818) 914 – 7314

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 12, 2016, at Fresno, California.

/s/ Heather L. Riley
Heather L. Riley

SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF